# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| YOUNG PHARMACEUTICALS, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>CHARETTE COSMETICS, LLC, D/B/A<br>CHARETTE COSMETICS MEDICAL<br>SPA; CHARETTE RX, LLC<br><br>    Defendants. | Civil Action No.<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Young Pharmaceuticals, Inc. ("Young" or "Plaintiff") does hereby, through its attorneys, allege as follows:

## INTRODUCTION

1.      This is an action for trademark infringement, false designation of origin, unfair competition and cybersquatting due to Defendant's willful infringement of Plaintiff's trademark MELANEX.

2.      Plaintiff brings this lawsuit to protect the substantial goodwill that it has developed over seven years in its distinctive MELANEX word mark. Plaintiff's federally-registered trademark has gained a reputation as being a source of high-quality cosmeceutical products.

3.      The goodwill and reputation for quality that Plaintiff has worked so hard to cultivate is being threatened by Defendant's actions. Defendant has used and continues to use its MELANX word mark and MELANX stylized mark ("MELANX marks"), which are confusingly similar to Plaintiff's MELANEX word mark, to sell competing goods to many of the same

consumers served by Plaintiff. Unless Defendant is enjoined from using its MELANX marks, such use will continue to cause confusion and will cause irreparable harm to Plaintiff.

4.      This action seeks injunctive relief, damages and other appropriate relief arising from Defendant's willful acts of trademark infringement, false designation of origin, unfair competition and cybersquatting.

## THE PARTIES

5.      Plaintiff Young Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Connecticut, having a principal place of business at 2138 Berlin Turnpike, Wethersfield, Connecticut 06109.

6.      Upon information and belief, Defendant Charette Cosmetics, LLC is a limited liability company organized and existing under the laws of the State of Georgia, having an office and place of business at 761 Morosgo Dr. N.E., Apt. 265, Atlanta, GA 30324.

7.      Upon information and belief, Defendant Charette Rx, LLC (together with Charette Cosmetics, LLC, "Charette" or "Defendants") is a limited liability company organized and existing under the laws of the State of Georgia, having an office and place of business at 761 Morosgo Dr. N.E., Apt. 265, Atlanta, GA 30324.

## JURISDICTION AND VENUE

8.      This is a civil action for trademark infringement, false designation of origin, unfair competition, and cybersquatting under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, for declaratory judgment of trademark validity and exclusivity under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and for substantial and related claims of trademark infringement and unfair competition under the statutory and common laws of the State of

Connecticut, including the Connecticut Unfair Trade Practices Act.

9.      Jurisdiction is conferred upon this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, 2201, and 2202.

10.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, since those claims are related to and arise from the same set of facts as Plaintiffs' Lanham Act claims.

11.     Upon information and belief, Charette is subject to personal jurisdiction in the District of Connecticut consistent with the principles of due process because Charette directly, or indirectly through its agents, does business and/or solicits business in this judicial district and has committed acts within this judicial district giving rise to this action.  Upon information and belief, Charette has engaged in substantial commercial activity within this judicial district, has substantial contacts here, and has purposefully availed itself of the privilege of conducting activities in the forum.  Charette is therefore subject to the personal jurisdiction of this Court and is amenable to service of process pursuant to the Connecticut long-arm statute, and Fed. R. Civ. P. 4(e)., Fed. R. Civ. P. 4(f) and/or Fed. R. Civ. P. 4(k)(2).  Requiring Charette to respond to this action will not violate due process.

12.     Charette has advertised its infringing goods for sale under the infringing mark through internet websites publicly accessible in Connecticut, including <charettecosmetics.com> (the "Charette Website") and <melanxpeel.com> (the "Melanx Website"), the content of which sites is, upon information and belief, owned and controlled by Charette.

13.     Charette has transacted business by selling its goods bearing the infringing mark direct to consumers through internet websites publicly accessible in Connecticut, including the

Charette Website and the Melanx Website, and through "med spas" where Defendants' infringing goods are offered to consumers by "aestheticians wearing white doctors' coats."

14.     Charette has further caused injury to Plaintiff within Connecticut by infringing the federally registered trademark owned by Plaintiff, which is headquartered in Connecticut and sells goods bearing the mark in Connecticut.

15.     This Court has in rem personal jurisdiction over the owner of the registration for melanxpeel.com, a domain name registered on April 7, 2022, through Google Domains, a US-based domain name registrar accredited by ICANN.

16.     The domain name registration for melanxpeel.com is believed to be owned by Charette Cosmetics, LLC, or Charette Rx, LLC. Because the domain name owner chose to maintain private registrations, the domain name owner's identity cannot be determined with certainty. Thus, melanxpeel.com is properly a named defendant under the doctrine of in rem jurisdiction established by the Anticybersquatting Consumer Protection Act, which allows a trademark owner to file suit against a domain name itself. 15 U.S.C. §1125(d)(2).

17.     Minimum contacts are not required to establish in rem jurisdiction, as the action relates directly to the property, namely, the domain name registration for melanxpeel.com. Thus, jurisdiction exists over any domain name registrant based on its registration through a US-based domain name registrar.

18.     A Melanx Website user who is located in Connecticut and adds the infringing goods to their cart, then proceeds to checkout, finds the "State" field of the checkout page auto-populated with "CT." Defendant melanxpeel.com apparently has designed the website to geolocate the user and auto-populate the "State" field. As such, the Melanx Website intentionally

4

targets users in the state of Connecticut. Furthermore, the affirmative choice to enable

geolocation on the Melanx Website, and specifically to auto-populate the "State" field with "CT"

for users geolocated in Connecticut, evidences that Defendant could reasonably foresee that the

infringing goods would be sold into the state of Connecticut. Additionally, at melanxpeel.com, a

Connecticut user can purchase an online session called a "Melanx Virtual Application," which

shows the Melanx Website's effects are felt in Connecticut; the owner of melanxpeel.com could

reasonably foresee that its goods and services would be sold in this Court's jurisdiction; the

owner of melanxpeel.com is purposefully availing itself of the resource of Connecticut; the

Melanx Website is interactive.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial

part of the events giving rise to the claims asserted arise in this district.

## FACTUAL BACKGROUND

### Young Pharmaceuticals and the MELANEX Mark

20.     Founded in 1977, Young Pharmaceuticals, Inc.is a Connecticut-based developer

of skincare products for dermatologists.

21.     Young has over 40 years of experience in developing topical products for a

variety of general dermatologic conditions.

22.     One such condition is hyperpigmentation or melasma, where a patient's skin

develops dark patches often referred to as "liver spots," "age spots," or "freckles."

Hyperpigmentation can be treated using topical products.

23.     Young has developed one such topical product for hyperpigmentation, and has

marketed this product under the MELANEX mark since at least as early as 2016.  Young has

used the MELANEX mark continuously in the United States Since that time.

24.     Young is the owner of all right, title, and interest in and to the mark MELANEX, which is the subject of U.S. Trademark Registration No. 5209028, issued on May 23, 2017, on the Principal Register of the United States Patent and Trademark Office ("USPTO") for medicated skin care preparations in Class 5.  A true copy of this registration is attached as Plaintiff's Exhibit A.

25.     Young's MELANEX mark has been in continuous use for over five years since it issued on May 23, 2017, and has therefore become eligible for incontestability under the provisions of 15 U.S.C. § 1065. An Affidavit of Incontestability was filed with the Declaration of Use for this registration at the USPTO on July 17, 2022; the filing awaits USPTO examination.

26.     Young's products for the treatment of hyperpigmentation are sold under the MELANEX mark to dermatologist offices and cosmetic surgeon offices, and other skin-care relevant settings which are overseen by a medical doctor  throughout the United States.

27.     Continuously since 2016, Young has also licensed dermatologist Carlos Wambier, MD, PhD to resell Young's MELANEX products to patients using Young's MELANEX mark.

28.     Dr. Wambier sells Young's product under the MELANEX mark both in his office, and on his website, at https://wambiermd.com/product/melanex/.  A picture of the MELANEX packaging as sold by Dr. Wambier is shown below:



29.     Plaintiff has invested substantial time, effort and financial resources promoting its MELANEX mark in connection with the marketing and sale of its goods in interstate commerce. The MELANEX mark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its quality products, and its goodwill. The consuming public recognizes the MELANEX trademark and associates it with Plaintiff.

30.     Plaintiff's MELANEX mark is inherently distinctive as applied to Plaintiff's goods that bear the mark.

31.     Plaintiff's MELANEX mark is an extremely valuable symbol and asset of Plaintiff, its quality products and services, and of the substantial consumer goodwill that Plaintiff has earned over many years.

## DEFENDANTS' UNLAWFUL CONDUCT

32.     Plaintiff has never authorized Charette to use the MELANEX mark.

33.     Defendants are improperly using the MELANX marks, which are confusingly

similar to Plaintiff's MELANEX mark without authorization in interstate commerce in connection

with  Defendants' own medicated product for treatment of hyperpigmentation, and, upon

information and belief, in its domain name <melanxpeel.com>.

### Defendants' Infringing MELANX Product

34.     Upon information and belief, Defendants have begun selling a medicated skin care

product for the treatment of hyperpigmentation called "MELANX."

35.     Defendants' MELANX product is generally directed to the same skin condition as

Young's MELANEX product.

36.     The only difference between the names of Defendants' MELANX product and

Young's MELANEX product is the removal of the final "e" in MELANEX.

37.     Defendants' MELANX product is sold in packaging that prominently bears the

MELANX name in red font, as shown below:



38.     In filings to the USPTO, Defendants have claimed that their first use of the

MELANX mark began in May 2021, or nearly five years after Young's senior use of the

MELANEX mark.

39.     Defendants have filed two trademark applications covering their purported

MELANX mark.

40.    The first, U.S. Trademark Application No. 90614739 ("the '739 application"), was filed on March 31, 2021 for the approval of the word mark MELANX in Class 3 (non-medicated skin care preprarations) and Class 5 (medicated skin care preparations).

41.    The second such application, U.S. Trademark Application No. 97173853 ("the '853 application"), was filed on December 15, 2021 for the approval of the stylized mark MELANX, also in Class 3 (non-medicated skin care preprarations) and Class 5 (medicated skin care preparations).

42.    At the time of this Complaint, neither application has been granted by the USPTO.

43.    On March 21, 2022, after receiving office actions rejecting Defendants' applications on the basis of Young's senior rights to the MELANEX mark for medicated skin care preparations, Defendants filed a petition to cancel Young's '028 Registration for its MELANEX mark.  That petition is currently pending before the Trademark Trial and Appeal Board ("TTAB") of the USPTO with a status of "suspended."

### Defendants' Infringing MELANX Domain

44.    Upon information and belief, one or more of Defendants are the registrants and users of the following domain name that contains a mark nearly identical to the distinctive and well-known '028 Registration MELANEX Mark: <melanxpeel.com>  (the "Infringing Melanx Domain").  Plaintiff is only aware of this single Infringing Melanx Domain at this time.

45.    The private domain name registration for <melanxpeel.com> was created on April 7, 2022, and the Registrant information isnot publicly available.  *See* Exhibit B.

46.    Upon information and belief, Defendants actively use the domain <melanxpeel.com>  to advertise their MELANX product.  Attached as Exhibit C are screenshots of

the < melanxpeel.com> domain and website pages.

47.     The Infringing Melanx Domain is identical or confusingly similar to Plaintiff's '028 Registration MELANEX mark.  The Infringing Melanx Domain contains a mark nearly identical to Plaintiff's '028 Registration MELANEX mark, with the only other additions to the domain name being the generic and descriptive term "peel" and the generic top-level domain ".com."

48.     Plaintiff's '028 Registration MELANEX mark is distinctive and was distinctive well before Defendants registered and used the Infringing Melanx Domain.

49.     The Infringing Melanx Domain does not resolve to any websites owned, controlled or endorsed by Plaintiff.  Instead, upon information and belief, it resolves to a websites that is owned and controlled by Defendants.

50.     Upon information and belief, Defendants use Plaintiff's '028 Registration MELANEX mark throughout the Infringing Melanx Domain, including use of the following logo:



51.     Upon information and belief, Defendants registered and use the Infringing Melanx Domain in bad faith to profit from Plaintiff's distinctive and well-known '028 Registration MELANEX mark.

52.     Plaintiff has not authorized Defendants to use Plaintiff's '028 Registration MELANEX mark or to register any domain name that includes Plaintiff's '028 Registration MELANEX mark.  Defendants are not affiliated or associated with Plaintiff in any way.

## Likelihood of Confusion Between the Marks

53.     There is a likelihood of confusion between the MELANEX mark and Young's goods and/or services, and Defendants' goods and/or services offered in interstate commerce and in connection with its Infringing MELANX marks.

54.     Plaintiff's MELANEX mark and the Infringing MELANX marks are substantially identical, with only difference being the omission of the second "e" in MELANEX, which has no impact on the pronunciation of the word.

55.     As a result of the similarity between the MELANEX mark and the Infringing MELANX marks and the respective goods and/or services, including but not limited to the sale of medicated skin care preparations under Class 5, Defendants' use of the Infringing MELANX marks, including but not limited to Defendants' sale of products bearing the Infringing MELANX marks to treat hyperpigmentation, is likely to cause confusion, mistake, and/or deception of purchasers as to the source of the parties' respective goods and/or services.

56.     As a result of the similarity between the MELANEX mark and Infringing MELANX marks, use of the Infringing MELANX marks is likely to cause confusion, mistake, and/or deception as to (a) the affiliation, connection, or association between the Plaintiff and Defendants, and/or (b) the origin, sponsorship, or approval of the Defendants' goods and/or services by the Plaintiffs.

## Defendants' Bad Faith Infringement of Plaintiff's Famous MELANEX Mark

57.     Defendants became aware of Young's senior rights to the MELANEX mark at least as of November 21, 2021, when the USPTO issued a non-final rejection of the '739 application on the basis of Young's senior rights to MELANEX in Class 5.

58.     On July 20, 2022, Plaintiff sent a cease and desist letter to counsel for Defendants regarding Defendants' violation of Plaintiff's MELANEX mark ("Demand Letter").

59.     Upon information and belief, at least as of at all times after November 21, 2021, Defendants have known, or had reason to know, of Young's rights in the MELANEX mark and have at all times known, or had reason to know, that the mark is famous throughout the world and extremely valuable.

60.     Upon information and belief, Defendants knowingly and for profit engaged in the aforementioned infringing use of Plaintiff's MELANEX mark, including in interstate commerce, to attract consumers.  Defendants know and have known that their use of the MELANEX mark erroneously conveys that Defendants' business is sponsored or endorsed by, or otherwise associated or affiliated with, Young.

61.     Defendants' infringing use has damaged, and will continue to damage and tarnish, the reputation, recognition, and goodwill associated with the famous and distinctive MELANEX mark, including because Defendants' aforementioned infringing use is in connection with selling direct to consumers without the medical supervision necessary for chemical peels of the strength found in Defendants' MELANX product.

62.     Defendants' infringing use has lessened, and will continue to lessen, the capacity of Plaintiff's MELANEX mark to identify and distinguish the products and services provided or endorsed by, or affiliated with, Plaintiff, and thus harming Plaintiff and the distinctive quality of Plaintiff's MELANEX mark.

63.     Further, on information and belief, Defendants' infringing use, including in interstate commerce, has been and continues to be of commercial value to Defendants.

64.     For the foregoing reasons, Defendants' infringing use, including in interstate commerce, has caused, and will likely continue to cause, injury to Plaintiff and to the goodwill and value of its MELANEX mark.

## COUNT I
### (Trademark Infringement under 15 U.S.C. § 1114)

65.     Young repeats and realleges paragraphs 165, above, as though fully set forth herein.

66.     Plaintiff owns all right, title and interest in and to the federal registration for the MELANEX mark.

67.     Upon information and belief, at the time of committing certain acts alleged herein, Defendants had actual or constructive knowledge of Plaintiff's ownership, prior use and registration of the MELANEX mark, including the '028 Registration which covers skin care preparations in Class 5.

68.     Defendants' unlawful, improper and unauthorized actions in interstate commerce, as set forth above, are likely to cause confusion, mistake or deception as to the source, origin or sponsorship of Defendants' products and/or services and to falsely mislead consumers into believing that Defendants' products and/or services originate from, are affiliated or connected with, and/or are approved by Young.

69.     Defendants' activities as set forth herein constitute an infringement of the MELANEX mark in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114(1).

70.     Defendants' acts of infringement have caused Plaintiff to sustain monetary damage, loss, and injury in an amount to be determined at trial, as well as damage and injury to its reputation and goodwill.

13

71.     Defendants have wrongfully obtained and/or will wrongfully obtain profits as a result of their use of the MELANX marks, which profits should be restored to Plaintiff.

72.     Defendants have engaged and continue to engage in these alleged activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

73.     Defendants' acts of infringement, unless enjoined by this Court, will continue to cause Plaintiff to sustain irreparable damage, loss, and injury for which Plaintiff has no adequate remedy at law.

## COUNT II
### (False Designation of Origin, False Association and Unfair Competition under 15 U.S.C. § 1125(a)) (based upon United States registrations)

74.     Young repeats and realleges paragraphs 1-74, above, as though fully set forth herein.

75.     Plaintiff has used its MELANEX mark in commerce since at least 2016 in connection with medicated skin care preparations.

76.     Upon information and belief, at the time of committing the acts alleged herein, Defendants had actual or constructive knowledge of Young's ownership and prior use of the MELANEX mark.

77.     Defendants have created and continue to create a false designation of origin under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) by using in interstate commerce, without the permission of or license from Young, the MELANEX mark in association with its MELANX product and Infringing Melanx Domain.

78.     These acts on the part of Defendants are likely to cause confusion, mistake or deception as to the source, origin or sponsorship of Defendants' goods and/or services and to

falsely mislead consumers into believing that Defendants' goods and/or services originate from, are affiliated or connected with, and/or are approved by Young.

79.     Defendants' acts of false designation of origin, false association, and unfair competition have caused Young to sustain monetary damage, loss, and injury in an amount to be determined at trial, as well as damage and injury to its reputation and goodwill.

80.     Defendants have wrongfully obtained profits as a result of their use of the MELANX marks, which profits should be restored to Young.

81.     Defendants have engaged and continue to engage in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

82.     Defendants' acts of infringement, unless enjoined by this Court, will continue to cause Young to sustain irreparable damage, loss, and injury for which Young has no adequate remedy at law.

## COUNT III
### (Cybersquatting under 15 U.S.C. § 1125(d))

83.     Young repeats and realleges paragraphs 1-83, above, as though fully set forth herein.

84.     Upon information and belief, one or more of Defendants are the registrants and users of the Infringing Melanx Domain.

85.     Plaintiff's '028 Registration for the mark MELANEX is distinctive and was distinctive before Defendants registered and/or used the Infringing Melanx Domain.

86.     The Infringing Melanx Domain is either identical or confusingly similar to Plaintiffs' distinctive and well-known '028 Registration MELANEX mark.  The Infringing Melanx Domain contains Plaintiff's '028 Registration MELANEX mark, with the only alteration

being the removal of the final "e" in "Melanex," and the addition of the generic and descriptive term "peel" and a generic top-level domain ".com".

87.     Upon information and belief, Defendants intentionally registered and used the Infringing Melanx Domain to divert consumers from Young by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendants' Infringing Melanx Domain.

88.     Upon information and belief, Defendants' registration and use of the Infringing Melanx Domain is intended primarily to capitalize on the goodwill associated with Plaintiff's '028 Registration MELANEX.

89.     Upon information and belief, Defendants had and have a bad faith intent to profit from the registration and use of the Infringing Melanx Domain by creating a false association, sponsorship, approval or affiliation with Plaintiff's '028 Registration MELANEX mark as to source and/or sponsorship.

90.     Defendants' acts constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

91.     Defendants' violation of this statute has caused and will continue to cause irreparable damage to Plaintiff, for which Plaintiff has no adequate remedy at law.  Unless enjoined, Defendants will continue to use the Infringing Melanx Domain, further injuring Plaintiff and confusing the public.

92.     By reason of the foregoing, Plaintiff is entitled to a transfer of the Infringing Melanx Domain.

## COUNT IV
**(Connecticut Common Law – Trademark Infringement)**

93.     Young repeats and realleges paragraphs 1-93, above, as though fully set forth

16

herein.

94.     This is an action for common law trademark infringement arising under the common law of the state of Connecticut.

95.     By virtue of the aforesaid acts, Defendants have attempted to and have created confusion as to the source of its products and/or services.

96.     Such acts have the natural and probable tendency to deceive the public so as to essentially pass off Defendants' products and/or services as those of Plaintiff's goods and/or services.

97.     As a result of Defendants' aforesaid acts, ordinary buyers making purchases under ordinary conditions have been and will be confused and deceived.

98.     Defendants' aforesaid unauthorized acts have been willful and have injured and violated the rights of Plaintiff in an amount to be determined at trial.  Further, by its actions, Defendants have irreparably injured Plaintiff, and such irreparable injury will continue unless this Court enjoins Defendants.

**<u>COUNT V</u>**
**(Violation of Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42100A, *et seq*.)**

99.     Young repeats and realleges paragraphs 1-99, above, as though fully set forth herein.

100.    By engaging in the acts alleged above, Defendants have willfully and maliciously engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness.

101.    Defendants' willful and malicious conduct was and is immoral, unethical, oppressive, and unscrupulous.

102.    Defendants' conduct has caused and will continue to cause substantial injury to Young and the public interest.

103.    Defendants committed such acts, and continue to commit such acts, in the conduct of trade or commerce.

104.    Young has suffered, and if Defendants are not enjoined will continue to suffer, an ascertainable loss of money or property as a result of Defendants' actions.

105.    By virtue of the conduct above, Defendants have engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act.

## <u>COUNT VI</u>
### (Declaratory Judgment of Validity and Exclusivity of Plaintiff's MELANEX Mark)

106.    Young repeats and realleges paragraphs 1-106, above, as though fully set forth herein.

107.    Young is entitled to the exclusive use of its MELANEX mark in the Class 5 class of goods by viture of its registration and continuous use of MELANEX in interstate commerce for more than six (6) years in connection with its sale of its MELANEX product in the United States.

108.    Young's '028 Registration MELANEX mark is valid and senior to Defendants' use of MELANX or Defendants' '739 and '853 applications.

109.    There is an actual, substantial, and continuing justiciable case or controversy between Young and Defendants regarding the validity of the '028 Registration MELANEX mark and Young's right to exclusive use thereof, at least because Defendants are infringing Young's

MELANEX mark by Defendants' sale of goods bearing the MELANX mark, Defendants' filing and maintain of the '739 and '853 applications, and Defendants' filing of and maintaining a petition to cancel Young's '028 Registration.

110.    Young is therefore entitled to a declaratory judgment that the '038 Registration is valid and that Young has exclusive rights to the '028 Registration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfullys ask this Court to enter judgment against Defendants, and against their respective subsidiaries, successors, parents, affiliates, officers, directors, agents, servants and employees, and all persons in active concert or participation with Defendants, as follows:

a.    Issue a preliminary and permanent injunction enjoining and restraining Defendants and its agents, servants, employees, successors, assigns and all other persons acting in concert or in conspiracy with any of them from engaging in any of the following acts:

i.    using Plaintiff's MELANEX Mark, logos, and/or trade names, including, but not limited to, the designation "MELANX" or any other name, logo, or mark that includes the designation "MELANX" or that is confusingly or deceptively similar to Plaintiff's MELANEX Mark, logos, and/or trade names, either alone or in conjunction with other words or symbols, as a part of any trademark, service mark, logo, trade name, corporate name, assumed name, domain name, on or in relation to any goods or services sold or distributed by the Defendants; and

ii.    any infringing activity, including, without limitation, advertising, promoting, marketing, franchising, distributing, selling and offering for sale, any

19

goods or services using the MELANEX mark, or any marks confusingly similar to the MELANEX mark, in any media;

b.      Compel Defendants, pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), to serve upon Plaintiff within thirty (30) days after service of an injunction, or such period as the Court may order, a report in writing under oath setting forth the manner and form in which Defendants have complied with the injunction;

c.      Declare that Defendants infringe Plaintiff's rights in the MELANEX mark in violation of 15 U.S.C. § 1114;

d.      Declare that Defendants' unauthorized sale and use in commerce of the MELANX mark in association with medicated skin products is confusingly similar to the MELANEX mark in violation of the Lanham Act, 15 U.S.C. § 1125(a), as a false designation of origin, false association, false description or representation;

e.      Declare that Defendants have engaged in unfair competition in violation of CUTPA, Conn. Gen. Stat. § 42-110A, *et seq*.;

f.      Declare that Plaintiff's '028 Registration is valid and that Plaintiff has exclusive rights in the MELANEX mark;

g.      Declare that Defendants' acts have violated Connecticut common law for trademark infringement;

h.      Declare that Defendants' acts described above were willful and intentional making this an exceptional case;

i.      Compel Defendants to recall and deliver up for destruction any and all goods, product packaging, promotional materials, advertisements and all other advertising and

promotional materials that use a MELANX mark, or any marks confusingly similar to the
MELANEX mark;

j.      Compel an accounting by a date certain of all gains, profits, cost savings and
advantages realized by Defendants from their acts of trademark infringement, false designation
of origin, false association, and unfair competition;

k.      Require Defendants to transfer to Plaintiff any and all domain names in their or
their agents' possession, custody, or control that include the MELANX mark or MELANEX
mark, including, but not limited to, <melanxpeel.com >;

l.      Award Plaintiff damages for Defendants' conduct including for its trademark
infringement and unfair competition;

m.      Award Plaintiff lost profits and restitution resulting from Defendants' conduct;

n.      Declare that the damages resulting from Defendants' infringement under the
Lanham Act be trebled due to Defendants' willfulness in accordance with 15 U.S.C. § 1117;

o.      Award Plaintiff statutory damages in the amount of $100,000 per infringing
domain name pursuant to 15 U.S.C. § 1117(d), or some other amount as the Court considers just;

p.      Award Plaintiff its costs and disbursements in this action including reasonable
attorneys' fees pursuant to 15 U.S.C. § 1117, and any other applicable provision of law;

q.      Award any such other relief to which Plaintiff is entitled under law and any other
and further relief that this Court or a jury may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 2, 2022                              Respectfully submitted,

By: /s/   Michael J. Rye
Michael J. Rye (ct18354)
Nicholas A. Geiger (ct28060)
mrye@cantorcolburn.com
CANTOR COLBURN LLP
20 Church Street, 22nd Floor
Hartford, CT 06103
Tel. (860) 286-2929
Fax. (860) 286-0115

*Attorneys for Plaintiff*
*Young Pharmaceuticals, Inc.*